## STATE OF SOUTH CAROLINA v. FOOT.

1. In action by a judgment creditor to vacate mortgages and an assignment of the judgment debtor for fraud, it is not necessary that the other creditors, in whose behalf as well as his own the action is brought, should have their claims in judgment.

2. The plaintiff might maintain this action notwithstanding his judgment was obtained only as a security for such creditors as might establish claims thereunder, if the judgment was also for a fixed amount of costs immediately enforcible.

3. In such an action it is not necessary that the complaint should state that the plaintiff's execution had been returned *nulla bona.*

4. Where an assignment for the benefit of creditors, executed after judgment obtained against the assigning debtor, disposed of property not covered by the lien of this judgment, or at least difficult to be reached by its execution, the judgment creditor might maintain action to vacate the assignment.

5. In action by a judgment creditor to vacate a mortgage of his debtor, it cannot be held on demurrer that the complaint, in omitting to allege that the mortgage debt would exhaust the mortgaged land, fails to state facts sufficient to constitute a cause of action, where the complaint does allege that it is impossible to collect the judgment unless the mortgage is set aside.

6. A judgment creditor has a cause of action against the assignee of his debtor where the property of the debtor is put by the assignment beyond the reach of the plaintiff's judgment, and is to be primarily applied to fraudulent mortgages.

7 A judgment creditor may bring his single action to vacate mortgages fraudulently executed by his debtor at one time, and an assignment for the benefit of creditors fraudulently and collusively executed by this same debtor at another time. This is but one cause of action— the attempted fraudulent disposition by all the defendants of the debtor's property to defeat the plaintiff's claim.

Before FRASER, J., Newberry, November, 1886.

This was an action by the State of South Carolina, a judgment creditor of Michael Foot, in behalf of itself and all other creditors of said M. Foot, against Michael Foot, B. Oderdorfer, Harry H. Samuels, Otto Klettner, and Mordecai Foot. The opinion states the case.

*Messrs. Moorman & Simkins* and *Y. J. Pope,* for appellants.

*Messrs. Geo. S. Mower, Suber & Caldwell,* and *Jas. Y. Culbreath,* contra.

October 6, 1887. The opinion of the court was delivered by

MR. JUSTICE MCIVER. The plaintiff, a judgment creditor of Michael Foot, suing on behalf of itself and all other creditors of said Foot, who may come in in the proper way and at the proper time, brings this action to set aside certain mortgages made by its judgment debtor to the defendants, Oberdorfer, Samuels, and Klettner, and also an assignment to the defendant, Mordecai Foot, upon the ground of fraud, and to subject the property embraced in such mortgages and assignment to the payment of the just debts of the said Michael Foot. To the complaint each of the defendants demurred upon two grounds: 1st. Because it does not state facts sufficient to constitute a cause of action. 2nd. Because several causes of action are therein improperly united. The Circuit Judge overruled the demurrers, and from his judgment defendants appeal.

The allegations of the complaint, which, for the purposes of this inquiry, must be taken to be true, are substantially as follows :

1st. That the defendant, Michael Foot, together with Henry C. Moses and others, executed their bond to the plaintiff, conditioned for the faithful discharge, by said Moses, of the duties of clerk of the Court of Common Pleas for Newberry County.

2nd. That said Moses failed to perform said duties and in consequence thereof the plaintiff commenced an action on the said bond against said Moses, Michael Foot, and the other sureties, and having obtained a verdict in said action for the sum of ten thousand dollars, judgment was duly entered thereon in the proper office on the 18th day of February, 1885, for the said sum, together with the sum of one hundred and sixty-six 79-100 dollars costs and disbursements in said action.

3rd. That execution was duly issued on said judgment and placed in the hands of the sheriff, who attempted to levy on the personal property of the said Michael Foot, but was resisted by the defendant, Mordecai Foot, who claimed the said property under a deed of assignment, from said Michael to said Mordecai Foot, a copy of which is filed as an exhibit to the complaint.

4th. That in consequence of said facts, the execution remains wholly unpaid in the hands of the sheriff.

5th. That on the 27th of January, 1885, the said Michael Foot executed a mortgage to the defendant, Oberdorfer, on all his real estate in the County of Newberry to secure the payment of an alleged debt of seven thousand five hundred dollars, with interest from the date of said mortgage.

6th. That the said Michael Foot, on the 7th of February, 1885, executed a mortgage to the defendant, Samuels, on "all his goods, wares, and merchandise, his store fixtures, his books of account, notes, bonds, and other choses in action, his two horses, his dray and harness, his double buggy and harness, and also undertook to set over and mortgage to said H. H. Samuels all his stock of goods which should thereafter be added to his stock by purchase or otherwise, during the existence of the said mortgage to him, and also all such accounts, notes, and bonds that might be due and owing to him, the said Michael Foot, during the existence of said mortgage, the pretense for said mortgage deed being" that the said Michael Foot owed the said Samuels a note for five thousand dollars, bearing even date with the mortgage.

7th. That on the 7th of February, 1885, the said Michael Foot executed a second mortgage to the defendant, Klettner, on the same property covered by the mortgage to Samuels, the pretended consideration of which was a debt for five thousand dollars which he professed to owe said Klettner.

8th. That these three mortgages were recorded in the proper office, on the 9th of February, 1885, during the term of the court at which plaintiff recovered its judgment above mentioned.

9th. That the assignment above referred to bears date the 29th of February, 1885, but was executed on the 19th day of that month, "immediately before, and in anticipation of the levy of plaintiff's execution": that the assignment undertakes to convey to the said Mordecai Foot all of the real estate of said Michael Foot, and also all his goods, accounts, notes, and bonds, for the purpose of having the same sold by said Mordecai for such prices and upon such terms as he may see fit, and applying the proceeds, first, to the payment of the costs and expenses of the

assignment, together with rents and taxes, and next to the payment of all the debts of the said Michael, giving a priority, however, to "any debts that may be already secured by pledges, mortgages, judgments, or other liens or incumbrances upon said property or any part thereof that the law shall require to be first paid."

10th. That the said Michael Foot has thus placed his property beyond the reach of the plaintiff's execution unless said mortgages and assignment are set aside.

11th. "That the said Michael Foot was probably insolvent at the time he executed the first of the above described mortgages, and has so continued ever since; that he was certainly insolvent before executing the assignment above described, if he owed any considerable portion of the debts alleged in the said mortgages to be owing from him;" that various other creditors, to a large amount, of said Michael Foot have issued attachments against his property; that said assignment is void on its face by reason of illegal preferences therein given; that the plaintiff is informed and believes that the indebtedness which the several mortgages purport to secure, is pretensive and that said Michael owes the mortgagees nothing; that said mortgages were not executed in good faith, but were given with the intent to hinder, delay, and defraud the creditors of said Michael Foot, and that the assignment was executed with like purpose.

12th. That the creditors of Michael Foot are very numerous, and the names of some of them not known to the plaintiff or its attorneys.

We concur with the Circuit Judge that this complaint does state facts sufficient to constitute a cause of action, and we only propose to consider the several grounds wherein it is alleged, in the argument, to be deficient.

First, it is contended that inasmuch as this action is brought by the plaintiff in behalf of itself, and all other creditors of Michael Foot who shall come in, seek relief by, and contribute to the expense of these proceedings, and inasmuch as it is not alleged that any other creditor is a judgment creditor of Michael Foot, the facts stated are not sufficient to constitute a cause of action. This contention is based upon the assumption that, in a creditor's

bill, *all* of those in whose behalf the action is brought must be judgment. creditors.    We do not think that such an assumption is well founded, and, on the contrary, we agree with the Circuit Judge, that "there is nothing in our practice which requires all or any of the creditors in whose behalf the action is brought, except the one named as plaintiff, to be judgment creditors." The reason of this is obvious.    If any one of the creditors is in a position to institute the action, he may do so ; and if the action results in making equitable assets, then all the others, even simple contract creditors, are entitled to share therein, and hence the action may be brought for their benefit, even though they might not be in a position to enable them to institute the action on their own behalf.    If the person named as the plaintiff is a judgment creditor, and has exhausted his legal remedies, then he may maintain an action to set aside a fraudulent deed whereby property has been placed beyond the reach of his execution, and when such deed is set aside the other creditors, as a matter of equity, are entitled to share in the proceeds of the property thus subjected to the payment of debts, and hence the action may be instituted by the judgment creditor on his own behalf as well as on behalf of the other creditors, who, though not entitled to bring such an action, are, nevertheless, equitably entitled to share in its fruits.

Next, it is contended that the plaintiff did not have such a judgment as it was entitled to enforce, inasmuch as under the ruling in *State* v. *Moses* (18 *S. C.*, 373), the judgment in favor of the plaintiff stood only as a security for those who may have sustained damage by reason of the breach of the condition of the bond, who must come in by proper proceedings and establish their claims, and there is no allegation that this had been done. To say nothing of the fact that it does not appear in the complaint what was the character of the judgment in favor of the plaintiff, and that under a demurrer no fact can be considered which does not so appear, it is quite sufficient, in answer to this objection, to say that it does appear in the complaint that the judgment was, not only for ten thousand dollars, which is assumed to have been the penalty of the clerk's bond, though that fact is not stated in the complaint, but was also for the sum of one hundred and sixty-

six 79-100 dollars, costs and disbursements, which, of course, could have been immediately enforced by levy and sale of the judgment debtor's property, if any could have been found subject to levy and sale. So that, even assuming that the plaintiff's judgment, so far as the ten thousand dollars was concerned, was not enforcible without further proceedings, yet the judgment unquestionably was immediately enforcible for the amount of the costs and disbursements, and that furnished a sufficient basis for this action.

Again, it is contended that the complaint was defective in not containing any allegation that the plaintiff's execution had been returned *nulla bona.* Whether the other allegations in the complaint would be sufficient to amount, practically, to such an allegation, need not now be considered, inasmuch as it has been determined that such an allegation is not necessary to the validity of such a complaint. *Burch* v. *Brantley*, 20 *S. C.*, 503.

The next ground taken by appellants is that even if the plaintiff is entitled to maintain this action against the mortgagees, it cannot be maintained against the assignee; inasmuch as the judgment in favor of plaintiff was entered the day before the execution of the deed of assignment, and thus having a prior lien on the property embraced in the assignment, the plaintiff was entitled to no equitable relief as against the assignment because none was needed. The question here raised falls more properly under the second ground of demurrer, and its consideration will be deferred until we reach that ground, only remarking now that it appears from the assignment, which is exhibited as a part of the complaint, that it covered property not subject to levy and sale under an execution, or at least property of such a character as it would be very difficult, if not impossible, to reach in that way, and to that extent, at least, a cause of action was stated against the assignee.

Again, it is urged that if the plaintiff be entitled to maintain this action against the mortgagees of the personal property, it cannot be maintained against Oberdorfer, the mortgagee of the real estate, because there is no allegation in the complaint that the property embraced in that mortgage was insufficient to pay the mortgage debt, and hence the plaintiff, for aught that appears,

has a plain and adequate remedy at law against the property covered by that mortgage. The meaning of this, as we understand it, is that the plaintiff could have levied on and sold the equity of redemption, as it is termed, of the judgment debtor in the real estate covered by that mortgage, and until that was done it could not be known whether it would be necessary to sell the whole interest in the property. It seems to us that this position of the appellants is based upon an assumption unfounded in fact, for it is alleged that the debtor, Michael Foot, has rendered it impossible for the plaintiff to collect the amount due on said judgment unless the assignment and the mortgages are set aside. Now, if this allegation be true, as, under the demurrer it must be taken to be, then it amounts to an allegation that, if the mortgages are allowed to stand, the debt due the plaintiff cannot be collected, and this could not be true unless the mortgage debts were sufficient to consume the mortgaged property.

Finally, it is urged that as the assignment embraces all of the property of the debtor, and provides for the payment of all his debts, without any illegal preferences amongst the creditors, it cannot operate to hinder or delay the creditors. What force there may be in this position when the case comes to be tried upon its merits, we do not propose now to consider, but its pertinency to the question raised by the demurrer is not apparent. We will only say that if, as alleged, the assignment was executed with a fraudulent purpose, and if, as is apparent from its terms, it places the disposition of the property of the debtor, which otherwise would be immediately subject to levy and sale under an execution in favor of creditors, absolutely under the control of the assignee, to be disposed of at his discretion; and if it provides, as it does, for the payment of mortgage debts alleged to be pretensive and fraudulent, before the payment of plaintiff's judgment, it would seem to be clear that a sufficient cause of action for setting it aside has been stated.

We agree, therefore, with the Circuit Judge, that the first ground of demurrer cannot be sustained.

As to the second ground that several causes of action are improperly united in the complaint, we also agree with the Circuit Judge in the conclusion which he has reached. It seems to us

that there is really but one cause of action stated in the complaint, arising from the right of the creditors to have the property of their debtor applied to the payment of their debts, which right has been invaded and sought to be defeated by the fraud of the debtor. participated in by the other defendants, in attempting to place his property beyond the reach of his creditors, or so entangling it with fraudulent claims as to offer serious obstructions to any attempt to reach it by the ordinary process of law.    The fact that the other defendants participated in the fraud of the debtor at different times, and that their fraudulent claims affected different portions of the property, cannot affect the question.

This view is fully sustained by the authorities cited by the Circuit Judge and by the counsel for respondent, as will be seen by reference to some of these authorities.    In *Pomeroy on Remedies,* section 349, it is said : "If the debtor has at different times assigned, in alleged fraud of his creditors, different parcels of his property to different assignees, or if different parcels of property are held by different persons in alleged fraud of the debtor's creditors, so that the equitable ownership is claimed to be vested in him, all of these assignees, or all these holders of the legal title, may be joined with the debtor as co-defendants in one action.    The reason given for this rule, permitting separate assignees or holders of the legal title to be joined, although they take by different conveyances and at different times, is, that they all have a common interest centering in the point at issue in the cause ; so that, while the title to one piece of property is in one defendant, and the title to some other distinct piece is in another defendant, yet these various titles were taken and are now held for a common purpose, and to accomplish the same fraudulent end. All are privy to, have been concerned in, acts tending to the same illegal result.    The matters are not distinct, but are, in truth, all connected with the same fraudulent transaction in which all the defendants have participated."

This was the rule in the former Court of Equity, which, as is said in *Pomeroy on Remedies,* section 480, has not been changed in this respect, by the code.    In *Brinkerhoff* v. *Brown* (6 *Johns. Ch.,* 139), it was held that a bill may be filed against several persons, relative to matters of the same nature, forming a con-

nected series of acts, all intended to defraud and injure the plaintiffs, and in which all of the defendants were more or less concerned, though not jointly in the same act. So far as the principles involved are concerned, that case, upon examination, will be found very much like the one now under consideration. In *Williams* v. *Neel* (10 *Rich. Eq.*, 338; 73 *A. D.*, 94), a creditor's bill to set aside deeds made at different times, for different pieces of property, to the several defendants, was sustained. The same doctrine was recognized in *Barkley* v. *Barkley*, 14 *Rich. Eq.*, 12.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.